## United States District Court
## District of Nebraska

| | |
|---|---|
| **Shane Lester,** | **Case No. 08cv0316** |
| **Plaintiff,** | **Chief Judge Joseph F. Bataillon** |
| | **Mag. Judge Thomas D. Thalken** |
| **v.** | |
| **Garrett Aviation Services, LLC** | **StandardAero's Brief in** |
| **d/b/a Landmark Aviation,** | **Response to Motion to Compel** |
| **Defendant.** | |

Defendant Garrett Aviation Services LLC (d/b/a StandardAero) ("StandardAero"), erroneously sued as Garrett Aviation Services LLC (d/b/a Landmark Aviation, LLC), submits this Brief ("Brief") in response to Plaintiff Shane Lester's ("Plaintiff") Motion to Compel ("Motion") the issuance of Subpoena to Mr. Richard Smith at RAS Aviation, LLC ("RAS Aviation").

## I. OVERVIEW

1.      Plaintiff's Motion attempts to steamroll disclosure of information firmly protected by the Federal Rules of Civil Procedure, the attorney-client privilege, work-product doctrine and joint defense privilege. Fundamental principles of justice and well-established authority preclude the disclosure of information targeted by Plaintiff's Subpoena to Richard Smith and RAS Aviation. Plaintiff's Subpoena is broadly worded to expressly discover firmly-protected, privileged information.

2.      Had Plaintiff fulfilled his obligation to the Court and attempted to meet and confer, in good faith and in person, as required by Local Rule 7.1(i), Plaintiff would know Mr. Smith is a non-testifying expert, not a testifying expert. Instead, Plaintiff rushed to Court with an unnecessary discovery motion. This is not the first time Plaintiff has failed to meet and confer before filing a discovery motion. On December 5, 2008, Plaintiff filed a Motion to Quash and a Protective Order without a

1

personal consultation when the parties had reached substantial agreement through e-mail on the terms of a Protective Order.

3.      StandardAero objects to Plaintiff's discovery of information and evidence from Mr. Smith, its non-testifying expert, to the disclosure of privileged attorney-client communications, attorney-work product, and information exchanged during the pendency of this lawsuit.  Plaintiff's Motion should be denied to prevent disclosure of privileged communications and information.

## II. FACTS

4.      The parties have designated their testifying expert witnesses. StandardAero designated an expert pilot, John Daraska, as did Plaintiff, who designated John Heida.  (*See* Richard Kovacik Declaration ("Kovacik Decl.") ¶ 12.)  In addition, StandardAero is utilizing Richard Smith as an expert consultant.  (*See* Kovacik Decl. ¶ 3; Richard Smith Declaration ("Smith Decl.") ¶ 23; Richard Love Declaration ("Love Decl.") ¶ 7.)  Mr. Smith is a pilot with over 43 years of flight experience, including over 39 years of experience as a flight instructor.  (*See* Smith Decl. ¶ 3.)  Mr. Smith is a veteran of the U.S. Air Force and the Owner and President of RAS Aviation, a one-man business retained by aircraft owners to manage aircraft.  (*See* Smith Decl. ¶ 4.)  As part of its duties to the aircraft owner, RAS Aviation, in turn, hires a maintenance and repair company to inspect and service the managed aircraft.  (*See* Smith Decl. ¶ 5.)  RAS Aviation is a client of StandardAero and has for over 25 years, contracted with StandardAero (or its predecessor entities) for over 90% of its maintenance and repair needs in Nebraska.  (*See* Smith Decl. ¶ 6.)  RAS Aviation's small office is located in the same building as StandardAero's Eppley Airfield facility, adjacent to the offices of StandardAero.  (*See* Smith Decl. ¶ 7.)

5.      At the time of the test flight on August 22, 2005, and at all times thereafter, RAS Aviation was contracted by Security Equipment, Inc. ("SEI") to manage

2

aircraft N411Z.    (*See* Smith Decl. ¶ 9.)    In keeping with RAS Aviation's and StandardAero's long-standing relationship, on or about August 1, 2005, RAS Aviation turned aircraft N411Z over to StandardAero for the aircraft's annual inspection and maintenance.    (*See* Smith Decl. ¶ 10.)    The completion of that inspection and maintenance by StandardAero prompted the August 22, 2005, test flight of aircraft N411Z, so as to test the safety and airworthiness of the aircraft.  (*See* Smith Decl. ¶ 11.)

6.    Mr. Smith was originally scheduled to pilot the August 22, 2005 test flight, but Plaintiff requested that Mr. Smith allow Plaintiff to test fly the aircraft.  (*See* Smith Decl. ¶ 12-13.)  At the time, Plaintiff was Mr. Smith's trainee and an independent contractor to the aircraft owners that RAS Aviation was servicing, including SEI.  (*See* Smith Decl. ¶ 14.)  Mr. Smith provided Plaintiff with personalized training, a means for Plaintiff to obtain air time, for purposes of various flight training certifications, and an opportunity to get paid.  Payment was generally rendered directly to Plaintiff by the various aircraft owners, including SEI.  (*See* Smith Decl. ¶ 15.)  Plaintiff disputes his relationship with Mr. Smith, asserting that he was an employee of RAS Aviation and piloted the test flight on August 22, 2005 at the request of Mr. Smith.  (*See* Plaintiff's Brief § A.2.)  What is not disputed, however, is that Mr. Smith, including his company RAS Aviation, was not involved in the inspection and maintenance of the aircraft, was not present at the time of the pre-flight inspection, was not on-board the test flight, was not a party to the post-flight inspection or investigation and, as such, has no personal knowledge of anything concerning the incident which is the focus of Plaintiff's Complaint.  (*See* Smith Decl. ¶ 16-19.)

7.    On or about September, 2005, about a month after the test flight on August 22, 2005, Plaintiff accepted full-time employment with Metro Engineering, Inc., and ceased flying with Mr. Smith.  (*See* Smith Decl. ¶ 20.)  On June 21, 2006, Plaintiff filed a lawsuit against Mr. Smith in connection with circumstances arising out of Mr. Smith's prior relationship with or alleged "employment" of Plaintiff.  (*See* Smith

3

Decl. ¶ 21.)  That action, titled *Shane Lester v. Richard Smith* was filed by Ms. Derr on June 21, 2006, in the Douglas County District Court, Docket No. 1062, Page No. 405. (*See* Smith Decl. ¶ 21.)  The action was dismissed by the Court on April 26, 2007.  (*See* Smith Decl. ¶ 21.)

8.     When on June 16, 2008 Plaintiff sued StandardAero in the instant action, StandardAero naturally turned to Mr. Smith.   After all, Mr. Smith was StandardAero's client, consultant and one of the most, if not the most, experienced and respected pilots locally.  (*See* Love Decl. ¶ 5.)  Mr. Smith was also a recent defendant in another lawsuit by Plaintiff and a fellow target of Plaintiff's numerous lawsuits, threatened lawsuits, false claims and allegations concerning RAS Aviation, Mr. Smith, StandardAero, certain StandardAero employees, and Plaintiff's prior dealings with these parties and the circumstances of the test flight on August 22, 2005.  (*See* Smith Decl. ¶ 21; Love Decl. ¶ 6.)

9.     Since the commencement of this action, and all through its pendency, Mr. Smith has provided valuable expert consultant services to StandardAero and its counsel.  (*See* Kovacik Decl. ¶ 3; Smith Decl. ¶ 23; Love Decl. ¶ 7.)  These consultations involved general areas of expertise, including, without limitation, assumption of risk by test pilots, sufficiency of pre-flight inspections, operation of aircraft, aircraft safety, and in-flight mechanical failures.  (*See* Kovacik Decl. ¶ 3; Smith Decl. ¶ 23; Love Decl. ¶ 7.)  Because Mr. Smith has no personal information concerning the incident, Mr. Smith's role as an expert consultant in this matter has been limited to expert analysis of independently-obtained factual information, including factual information obtained from StandardAero, third parties and public records.  (*See* Kovacik Decl. ¶ 4; Smith Decl. ¶ 24; Love Decl. ¶ 8.)

10.     Since the commencement of this action, and all through its pendency, Mr. Smith's expert consultations with StandardAero and its counsel were always in confidence and always with the mutual understanding of such confidence.  (*See*

4

Kovacik Decl. ¶ 5; Smith Decl. ¶ 25; Love Decl. ¶ 9.)  Further, these consultations were always in the course of StandardAero's legal representation and legal defense in this matter, and deemed necessary for such representation and defense.  (*See* Kovacik Decl. ¶ 5; Smith Decl. ¶ 25; Love Decl. ¶ 9.)  Finally, these consultations were always with the mutual understanding that StandardAero and RAS Aviation had a common interest in defending against Plaintiff's indiscriminate claims and allegations concerning RAS Aviation, Mr. Smith, StandardAero, certain StandardAero employees, Plaintiff's prior dealings with these parties, and the circumstances of the test flight on August 22, 2005.  (*See* Kovacik Decl. ¶ 6; Smith Decl. ¶ 26; Love Decl. ¶ 10.)

11.   On December 2, 2008, Plaintiff provided a Notice of Intent to issue a Subpoena to Mr. Smith/RAS.  (*See* Kovacik Decl. ¶ 7.)  The Subpoena is specifically designed to encompass all of the expert consultations that Mr. Smith provided to StandardAero in the course of this action.  (*See* Kovacik Decl. ¶ 7.)  The Subpoena requests all documents regarding or referring to: Plaintiff, the incident, all communications with any other person or entity concerning the incident, any investigation of the incident, and any allegation of pilot error during the incident (from ground inspection prior to the flight and thereafter).  (*See* Kovacik Decl. ¶ 7.)  On December 5, 2008, StandardAero objected to the issuance of the Subpoena on the grounds of attorney-client communications, attorney-work product and common interest privileges.  (*See* Kovacik Decl. ¶ 8.)

12.   On December 5, 2008, Plaintiff's counsel sent to StandardAero's counsel an e-mail inquiring as to whether StandardAero represents Mr. Smith.  (*See* Kovacik Decl. ¶ 9.)  On December 5, 2008, counsel for StandardAero sent Plaintiff's counsel an e-mail stating that Mr. Smith was a consultant in this lawsuit and that any communications and materials exchanged between StandardAero and Mr. Smith are strictly for purposes of facilitating the legal representation of StandardAero in this action.  (*See* Kovacik Decl. ¶ 10.)  On December 18, 2008, Plaintiff's counsel sent

5

StandardAero's counsel a letter bluntly asserting that the attorney-client and common interest privileges do not apply "unless your firms are representing Mr. Smith/RAS Aviation Services, LLC," and because "neither Mr. Smith nor RAS Aviation Services, LLC are defendants in this case." (*See* Kovacik Decl. ¶ 11.) The letter did not cite any authority for either of these positions. (*See* Kovacik Decl. ¶ 11.)

13.    On December 18, 2008, StandardAero included Mr. Smith on its original list of expert witnesses. (*See* Kovacik Decl. ¶ 12.) The disclosure stated that discovery is ongoing and reserves the right to amend the disclosure as additional witnesses are discovered. (*See* Kovacik Decl. ¶ 12.) On December 22, 2008, counsel for StandardAero sent Plaintiff's counsel a letter in response to Plaintiff's December 18, 2008 letter. (*See* Kovacik Decl. ¶ 13.) The letter stated that StandardAero is considering Plaintiff's contentions concerning the inapplicability of privilege to Mr. Smith and that it would welcome dialogue on these and other related issues. (*See* Kovacik Decl. ¶ 13.) In reference to Plaintiff's assertions that the attorney-client and common interest privileges do not apply "unless your firms are representing Mr. Smith/RAS Aviation Services, LLC," and because "neither Mr. Smith nor RAS Aviation Services, LLC are defendants in this case," StandardAero stated: "StandardAero takes these assertions under consideration. In order to help us understand your position.…" (*See* Kovacik Decl. ¶ 13.) StandardAero further stated that they would be "happy to consider" any authority that Plaintiff may provide. (*See* Kovacik Decl. ¶ 13.)

14.    Plaintiff's counsel has not replied to StandardAero's letter. (*See* Kovacik Decl. ¶ 14.) In spite of StandardAero's letter, Plaintiff's counsel has not made any further contact with StandardAero's counsel concerning the Smith Subpoena. (*See* Kovacik Decl. ¶ 15.) Plaintiff's counsel has not engaged in a discussion, as requested by StandardAero, concerning the Smith Subpoena or StandardAero's objections thereto. (*See* Kovacik Decl. ¶ 16.) At no time did Plaintiff's counsel engage StandardAero's

counsel in a person-to-person conversation concerning the Smith Subpoena, StandardAero's objections thereto or StandardAero's designation of Mr. Smith as an expert witness. (*See* Kovacik Decl. ¶ 17.) To StandardAero's counsels' knowledge, at no time did Plaintiff's counsel attempt to engage StandardAero's counsel in any such in-person conversation. (*See* Kovacik Decl. ¶ 17.) Yet this designation of Mr. Smith as an expert witness constitutes the crux of Plaintiff's argument in the Motion to Compel, filed by Plaintiff, on January 9, 2009. (*See* Plaintiff's Brief § A.2.) From the onset of this dispute concerning Mr. Smith, Plaintiff's counsel has not attempted any in-person conversation with StandardAero's counsel or made any attempt whatsoever at personal consultation. (*See* Kovacik Decl. ¶ 14-19.)

15.     On January 13, 2009, StandardAero's counsel sent Plaintiff's counsel a letter, along with an Amended Expert Witness List which deleted Mr. Smith as a testifying expert, with electronic notice served the following day. (*See* Kovacik Decl. ¶ 18.) The letter stated that this disclosure amends and replaces the disclosure previously sent on December, 18, 2008, and that the earlier disclosure included a non-testifying expert consultant no longer expected to testify at trial. (*See* Kovacik Decl. ¶ 18.) Again, Plaintiff's counsel has not made any contact with StandardAero's counsel concerning the withdrawal of Mr. Smith as an expert witness or the implications of such withdrawal on Plaintiff's Motion. (*See* Kovacik Decl. ¶ 19.)

### III. ARGUMENT

16.     Plaintiff's Motion to Compel should be denied. Mr. Smith is a non-testifying expert consultant. Plaintiff should not be granted access to privileged, strategic communications, and work-product information concerning StandardAero's legal defense.

17.     Plaintiff's tactics effectively force StandardAero to prove Plaintiff's case in the negative. StandardAero's conduct is not "flippant," as Plaintiff's brief

7

suggests.  (*See* § none.)  To the contrary, *Plaintiff* has failed to meet and confer in good faith, and in person, as expressly required by Local Rule 7.1.  NE Civ. R. 7.1.  As a result, *Plaintiff* does not cite and does not apply the correct legal standard for discovery from non-testifying expert witnesses.  *Plaintiff* does not show why, under the correct standard, the information requested is discoverable.  *Plaintiff* cites no authority whatsoever to show why privilege does not apply to non-testifying expert consultants. Plaintiff's Motion should be denied.

18.    Mr. Smith was not a party to and therefore does not possess factual knowledge or information concerning the inspection, maintenance, pre-flight inspection, test flight, post-flight inspection or investigation.  Plaintiff may argue to the contrary. Even if this Court finds that Mr. Smith *may* possess such knowledge or information, sound precedent dictates that the possession of such information by an expert consultant does not waive the protection of any privileged knowledge or information possessed by the expert.   In other words, discovery should be limited to such underlying factual knowledge or information, or lack thereof, and not extend to privileged communications and work-product involving Mr. Smith.  Accordingly, the Court should deny Plaintiff's Motion to Compel issuance of the Smith subpoena, in its entirety or, at a minimum, in its present overbroad form, so as to prevent disclosure of non-discoverable privileged communications and information.

## A. Plaintiff's Violation of Local Rule 7.1 by Failing to Meet and Confer in Person and in Good Faith Warrants Denial of Plaintiff's Motion.

19.    Plaintiff's failure to meet and confer in good faith, and in person, is grounds for denial of Plaintiff's Motion.  Local Rule 7.1(i) requires parties to meet and confer in person and informally attempt to resolve discovery disputes before rushing to Court for a solution.  *See* Local Rule 7.1(i).  Failure to do so warrants denial of a discovery motion.  *Id.* ("[T]his court will not consider any discovery motion unless counsel for the moving party, as part of the motion, shows in writing that after personal

consultation with counsel for opposing parties and sincere attempts to resolve differences, they are unable to reach an accord."). The Rules define "Personal Consultation" as "person-to-person conversation, either in the physical presence of each counsel or on the telephone." *Id.* Letters, faxes, voice mail messages, or e-mails between or among counsel may only constitute personal consultation for purposes of this rule upon a showing that person-to-person conversation was attempted by the moving party and thwarted by the non-moving party. *Id.*

20. Plaintiff has failed to make a showing of personal consultation, failed to engage in a personal consultation and failed to attempt a personal consultation. As a result, Plaintiff has engaged in unnecessary motion practice and failed to apply the correct legal standard along the way. Plaintiff's Motion should be denied for each of these reasons. Had Plaintiff fulfilled his obligation to observe the Court's discovery rules, and met the simple "meet and confer" in person and in good faith requirement of Local Rule 7.1(i), Plaintiff would have learned that Mr. Smith is a non-testifying expert consultant who is subject to the limited disclosure strictures of Rule 26(b)(4)(B) of the Federal Rules of Civil Procedure. Instead, Plaintiff has once again failed to meet and confer in person and in good faith before filing a discovery motion. *See* p. 1, ¶ 2, *supra*. Plaintiff's violation of Local Rule 7.1, standing alone, warrants denial of his Motion.

### B. Plaintiff Has Not and Cannot Make the Necessary Showing to Justify Discovery from Mr. Smith, a Non-Testifying Expert Consultant.

21. Plaintiff's analysis is flawed because Mr. Smith is a non-testifying expert consultant and not a testifying expert witness. Discovery from a non-testifying expert consultant is controlled by Rule 26(b)(4)(B), which permits only limited discovery and only in limited circumstances:

> Ordinarily a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in

9

> anticipation of litigation or to prepare for trial. But a party
> may do so only: (i) as provided in Rule 35(b) [governing
> mental and physical examinations]; or (ii) on showing
> exceptional circumstances under which it is impracticable for
> the party to obtain facts or opinions on the same subject by
> other means.

*Fed. R. Civ. P.* 26(b)(4)(B). Because Mr. Smith is a non-testifying expert consultant, Plaintiff must meet either the Rule 35(b) or exceptional circumstances thresholds to compel discovery from Mr. Smith. *See Sunrise Opportunities, Inc. v. Regier*, 2006 WL 581150 at *7 (N.D. Ill. 2006) ("Because no [] reason exists to depose non-testifying experts… Rule 26(b)(4)(A) allows only for deposition of experts that a party intends to call at trial."). Rule 35(b) governs mental and physical examinations and does not apply. *See Fed. R. Civ. P. 35(b).*

22.    Further, Plaintiff has not and cannot make the requisite showing of "exceptional circumstances." The "exceptional circumstances standard" imposes a heavy burden on the party seeking discovery from a non-testifying expert. *See Schwab v. Philip Morris USA, Inc.*, 2006 WL 721368 at *2 (E.D.N.Y. 2006) ("[a] non-testifying expert… is generally immune from discovery.") (internal quotations, citations & emphasis omitted); *Hoover v. U.S. Dep't of Interior*, 611 F.2d 1132, 1142 n. 13 (5th Cir. 1980) ("A party seeking disclosure under Rule 26(b)(4)(B) carries a heavy burden."); *Spearman Indus. St. Paul Fire & Marine Ins. Co.*, 128 F. Supp. 2d 1148, 1151 (N.D. Ill. 2001) (Under Rule 26(b)(4)(B), a party "carries a heavy burden in demonstrating the existence of exceptional circumstances."). Plaintiff has failed to point to any reason whatsoever, much less any "exceptional circumstances," justifying discovery of Mr. Smith, a non-testifying expert.

23.    District Courts in the Eight Circuits adhere to the "exceptional circumstances" standard for discovery of non-testifying expert consultants. *See White v. Cooper Indus., Inc.*, 2008 WL 3245461 (D.S.D. 2008), *Amir v. St. Louis Univ.* 1997 WL

10

34626563 (E.D. Mo. Aug. 20, 1997) (doctor retained to provide expert opinion but not testify could only be deposed upon showing of exceptional circumstances); *Brown v. Ringstad*, 142 F.R.D. 461, 463-64 (S.D. Iowa 1992).  In *Brown,* the court noted the paucity of Eighth Circuit authority on the issue but adopted the "exceptional circumstances" standard citing *Kuster v. Harner*, 109 F.R.D. 372 (D. Minn. 1986).  In its analysis, the *Kuster* court cited to and relied on *Ager v. Stormont Hospital & Training School for Nurses,* 622 F.2d 496, 503 (10th Cir. 1980) (adopting exceptional circumstances standard for Rule 26(b)(4)(B) matters), noting that *Ager* has become the prevailing standard during the years since its decision.  The *Brown* court also looked to Judge Beam's analysis in his dissenting opinion in *Cox v. Piper, Jaffray & Hopwood, Inc.*, 848 F.2d 842, 845 (8th Cir. 1988).  Judge Beam also cited *Ager*, and applied the exceptional circumstances analysis under Rule 26(b)(4)(B), rather than align himself with the majority, which refused to address the substantive issue, based on its analysis of the court's jurisdiction.

24.     In *White*, experts were designated as non-testifying after a subpoena was issued.  *See White*, 2008 WL 3245461 at *3.  The court determined the factual information was available through other means and, as a result, "exceptional circumstances," as contemplated by Rule 26(b)(4)(B), did not exist.  *See* White, 2008 WL 3245461 at *3-4.  The *White* court refused to compel discovery of opinions of non-testifying experts, saying that the non-moving party had provided all discoverable facts and that "[e]ven if some information has not been disclosed, however, [the moving parties] have not asserted that they are unable to" procure such information independently.  *See White*, 2008 WL 3245461 at *3.  According to the court:

> Under these circumstances, the court finds that defendants have not demonstrated "exceptional circumstances" under Rule 26(b)(4)(B) to discover any additional facts…. Further because defendants have in their possession, or have access to all data that plaintiffs' nontestifying experts obtained… defendants have not demonstrated 'exceptional

> circumstances' to compel this court to order the disclosure of
> the opinions of the nontestifying experts…. There is no
> reason defendants' own experts cannot examine the data and
> reach an independent conclusion.  This finding is consistent
> with one of the recognized goals of Rule 26(b)(4)(B), to
> prevent the *"unfairness of allowing an opposing party to*
> *benefit from a party's effort and expense incurred in*
> *preparing its case[.]*

*Id*. (emphasis in original), citing *House v. Combined Ins. Co. of Am.*, 168 F.R.D. 236, 241
(N.D. Iowa 1996).  Thus, an expert employed in anticipation of litigation who is not
expected to be called as a witness at trial, can be deposed only upon a showing of
"exceptional circumstances" under which it is impracticable for the party seeking
discovery to obtain facts or opinions on the same subject matter by other means.

        25.    Even if the Court considers that Mr. Smith was initially designated
as a testifying expert and then re-designated as a non-testifying expert, the applicable
analysis and attendant standard do not change.   Countless decisions apply the
"exceptional circumstances" standard in barring discovery from an expert whose
designation changes from testifying to non-testifying.  *See Callaway Golf Co. v. Dunlop*
*Slazenger Group Americas*, 2002 WL 1906628 at *3 (D.Del. 2002) ("A common theme
is apparent throughout the cases reviewed from various jurisdictions-the conversion of an
expert designated for trial purposes under Rule 26(b)(4)(A), to a consulting expert, under
Rule 26(b)(4)(B) is allowed and results in insulating that expert from discovery, absent a
showing of exceptional circumstances."); *Estate of Manship v. United States*, 240 F.R.D.
229, 237 (M.D. La. 2006) ("[T]he majority approach in federal jurisprudence is to allow
the work product protection/consultative privilege to be restored, even if a testifying
expert witness' designation is withdrawn *after* his/her opinions have been disclosed.")
(emphasis added); *Sunrise Opportunities, Inc. v. Regier*, 2006 WL 581150 at *7 (N.D. Ill.
2006); *Dayton-Phoenix Group v. General Motors Corp.*, 1997 WL 1764760 at *2 (S.D.
Ohio 1997); *Carroll v. Praxair*, 2007 WL 437697 (W.D. La. 2007); *Vincent v. Mortman*,
2006 WL 2349448 (D. Conn. 2006); *Cincinnati Ins. Cos. v. Hamilton Beach/Proctor-*

*Silex, Inc.*, 2007 WL 2609829 (N.D. Ind. 2007); *Federal Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 2008 WL 761417 (N.D. Cal. 2008). As these cases and countless others demonstrate, a re-designation of an expert is not an uncommon occurrence in the course of discovery and not deemed a waiver absent "exceptional circumstances."

26.    Recognizing that the re-designation of experts is a part of discovery and case development, courts have held that the "exceptional circumstances" standard for re-designated witnesses is *exceptionally* difficult to meet. Exceptional circumstances are not present if the expert's designation is changed *prior* to disclosure of any report, deposition testimony or trial testimony. *See Ross v. Burlington N. R. Co.*, 136 F.R.D. 638, 638-39 (N.D. Ill. 1991) (no exceptional circumstances where a re-designation occurred before any expert testimony was given); *Estate of Manship*, 240 F.R.D. at 237 (no exceptional circumstances where a re-designated expert would not testify at trial and did not produce expert reports). Exceptional circumstances are not present if a re-designation is made just prior to the expert's deposition. *See*, *e.g., Callaway Golf Co.*, 2002 WL 1906628 (refusing to permit the deposition of an expert whose deposition had been changed from testifying to non-testifying just prior to his deposition). In some cases, such exceptional circumstances are not present even *after* expert reports are exchanged. *See FMC Corp. v. Vendo Co.*, 196 F. Supp. 2d 1023, 1041-47 (E.D. Cal. 2002) (discovery of re-designated expert witness denied despite the fact that the expert witness produced expert report and opinions); *In re Shell Oil Refinery*, 132 F.R.D. 437, 440 (E.D. La. 1990) (exchange of expert reports did not waive Rule 26(b)(4)(B)'s protection).

27.    This is not a case where a designation was made, expert reports were disclosed and relied upon, or expert depositions were taken and privileged then invoked after-the-fact. Waiver is a possibility only in extenuating circumstances, such as where expert reports have been exchanged, expert depositions has taken place, expert trial testimony has been rendered or a party refuses to remove the name of an expert

13

consultant from its list of expert witnesses.  *Furniture World v. D.A.V. Thirft Stores,* 168 F.R.D. 61, 63 (D.N.M. 1996) ("unless the Defendant removes [the expert] from the list of witnesses expected to testify at trial, the Defendant's designation of [the expert] as a consulting expert does not bar her deposition nor negate her obligation to produce the documents the Plaintiff has requested from her.").  *See, e.g., Stoner v. New York City Ballet Company*, 2002 WL 31875404 at *6 (S.D.N.Y. 2002) (same); *Bradley v. Cooper Tire & Rubber Co*., 2007 WL 148764 *2 (D.N.H. 2007).  This is not that case.  Here, expert reports have not been exchanged, expert depositions have not been taken, testimony has not been given nor has testimony been given.

28.    Further, no exceptional circumstances may be shown if the parties seeking discovery are able to obtain equivalent expert information from other sources. *See Mantolete v. Bolger*, 96 F.R.D. 179 (D. Ariz. 1982) (holding that discovery of opinions of defendant's nonwitness consultant would not be allowed, where plaintiff's own expert witness was fully able to provide plaintiff with necessary facts and his opinions of the relevant issues); *Spearman Indus. St. Paul Fire & Marine Ins. Co.*, 128 F. Supp. 2d at 1152; *see also Hartford Fire Ins. Co. v. Pure Air on the Lake Ltd. Partnership*, 154 F.R.D. 202, 208 (N.D. Ind. 1993); *Shell Oil Refinery*, 132 F.R.D. at 442.  Both parties have designated testifying experts who are pilots.  This fact alone eviscerates any argument that testimony or expert analysis from another expert pilot, such as Mr. Smith, is warranted.

29.    Plaintiff's argument that Mr. Smith may possess factual information concerning the test flight – and that Plaintiff is therefore entitled to all of StandardAero's privileged communications and work-product involving Mr. Smith – is unavailing.  Even in such instances where an expert possesses discoverable facts developed before the expert was retained in anticipation of litigation, no exceptional circumstance exists as to compel discovery of expert communications and information.  S*ee Dayton-Phoenix*, 1997 WL 1764760 at *2 (requiring a showing of purpose before allowing limited deposition of

14

re-designated expert with respect to knowledge and facts developed before litigation, but barring discovery of facts and opinions acquired as an expert consultant).  StandardAero was a party to the inspection, maintenance, and investigation.  Plaintiff was a party to the pre-flight inspection, the test flight and the post-flight inspection.  Mr. Smith had no personal involvement in any of these matters.  Therefore, the information sought in the Smith Subpoena is not only information that Plaintiff can procure independently – but is information Plaintiff is in a far better position to procure independently and has, to date, resisted disclosing to StandardAero.  More importantly, the alleged existence of any such factual information does not and cannot constitute "exceptional circumstances" as to justify discovery of all of Mr. Smith's expert consultation.  *See also* discussion at p. 28-30, ¶ 51-54, *infra*.

30.    Finally, the right to re-designate experts is a fundamental part of discovery and case development.  Expert witnesses may be withdrawn as a matter of right.  *See Ross*, 136 F.R.D. at 638-39 ("Although plaintiff may have originally designated the witness as a testifying expert, *plaintiff has the prerogative of changing his mind.  Since plaintiff changed his mind before any expert testimony was given in this case, the witness never actually acted as a testifying expert witness*.") (emphasis added); *Mantolete*, 96 F.R.D. at 182 ("Plaintiff contends that defendant's recharacterization of Schulenberger as a non-witness was solely to avoid discovery and constitutes a gross abuse of the federal rules.  This argument, however, is without merit.  *The defendant is permitted to execute the trial strategy it deems appropriate to defend its case; this extends to changing the status of an expert*, which thereby narrows the scope of discovery."), citing *Bailey v. Meister Brau, Inc.*, 57 F.R.D. 11, 13-14 (N.D. Ill. 1972) (emphasis added).  Moreover, strict adherence to the exceptional circumstances threshold with respect to re-designated experts is a fundamental issue of fairness:

> The purpose of Rule 26(b)(4)(A), which permits discovery from a testifying expert witness, is to facilitate cross-examination of that expert at trial. . . .  That purpose is not

15

implicated where, as here, the expert will not testify, has never been deposed and has never produced a report. The goal of Rule 26(b)(4)(B) is to "promote fairness by precluding unreasonable access to an opposing party's diligent trial preparation.

*Netjumper Software, L.L.C. v. Google, Inc.*, 2005 WL 3046271 at *3 (S.D.N.Y. 2005) (citations omitted); *see also Dayton-Phoenix*, 1997 WL 1764760 at *2 (fairness would not be accomplished by allowing access to other party's trial preparation by way of discovery from a re-designated expert absent exceptional circumstances); *Carroll*, 2007 WL 437697; *Vincent*, 2006 WL 2349448. The re-designation of Mr. Smith is a matter of right. The protection of Mr. Smith's expert information is a matter of fairness. Any discovery from Mr. Smith only provides Plaintiff an unfair benefit from StandardAero's effort and expense incurred in preparing its case.

31.    The subpoena served on Mr. Smith places this matter squarely within the realm of the "exceptional circumstance" test, which Plaintiff has not and cannot meet. In fact, StandardAero has amended its expert witness disclosure to exclude Mr. Smith well in advance of any expert report disclosure, expert deposition, expert testimony or any other form of reliance by Plaintiff on any expert designation of Mr. Smith. One would search in vain for any such form of reliance by Plaintiff on Mr. Smith's prior designation as a testifying expert. Even if Plaintiff cries "foul" and offers his Motion as evidence of reliance, his Motion was filed without the requisite meet and confer. That simple step would have informed Plaintiff that the designation was being withdrawn before Plaintiff rushed to Court with the issue. Plaintiff has failed to point to any reason whatsoever, much less "exceptional circumstances," as to why discovery of Mr. Smith, a non-testifying expert, should be permitted. Further, this matter is still in the early stages of discovery. Plaintiff has not yet been required to disclose his expert report(s), there has been no fact or expert depositions, the discovery deadline is months away, trial is more than nine months away, and Plaintiff has an expert pilot assisting with his trial preparation.

16

32.     Plaintiff's analysis of the issue is based on the standard for discovery of testifying expert witnesses are simply inapplicable.  Plaintiff relies on *In re Pioneer Hi-Bred Int'l, Inc.*, 238 F.3d 1370 (Fed. Cir. 2001).  *Pioneer* was a decision by the Federal Circuit (and not the Eighth Circuit, as Plaintiff represents) analyzing the Eighth Circuit standard for disclosure of documents and evidence to a testifying expert.  *Pioneer*, 238 F.3d at 1374.  Mr. Smith is a non-testifying expert consultant, making Plaintiff's citation to and reliance upon *Pioneer* factually and legally irrelevant.  Further, *Pioneer* relies exclusively on the Eighth Circuit's *U.S. v. Cote*, 456 F.2d 142 (8th Cir. 1972).  *Cote* does not address testifying or non-testifying experts, and simply stands for the fundamental proposition that privilege extends to communications and information exchanged between a party and its agent for purposes giving legal advice unless there is waiver by way of actual disclosure to a third party.  *See Cote*, 456 F.2d at 144-45 (8th Cir. 1972).  Thus, *Cote* squarely supports StandardAero's position that any communications or information exchanged between StandardAero, its counsel, and its expert consultant, Mr. Smith, are privileged as a matter of law.  There was no waiver by way of any disclosure of such communications or information to a third party.

33.     In short, Plaintiff's argument is legally unsupported.  Under the applicable legal standard, Plaintiff has not and cannot make the requisite showing of "exceptional circumstances."  Like the courts in *White*, *Amir*, *Kustir, Brown, Cox,* and *Ager*, this Court should reject Plaintiff's request for Mr. Smith's privileged communications and information without a showing of "exceptional circumstances."  Because Plaintiff has not and cannot show  "exceptional circumstances," and the authorities interpreting Federal Rule 26(b)(4)(B) Plaintiff's Motion should be denied.

**C. Analysis Apart from Rule 26(b)(4)(B) Demonstrates that Information and Documents Communicated to or from Mr. Smith is Protected by the Attorney-Client Privilege, the Work-Product Doctrine and the Joint Defense Privilege.**

34.     Aside from the protections provided by Federal Rules, common law privilege doctrines provide protection from disclosure.   Plaintiff implicitly admits as much.   Plaintiff's argument is that "waiver" has been effected, not that privilege does not exist.   Plaintiff claims instead he is "confused" about Mr. Smith's role and that his confusion should be resolved in favor of disclosure.   There is no legitimate basis for Plaintiff's claim of confusion.   Mr. Smith is, and, since the inception of this lawsuit, always has been identified by StandardAero as an expert consultant.   Mr. Smith's designation as a *testifying* expert witness was made on December 18, 2008, and withdrawn on January 13, 2009.   That withdrawal was communicated to Plaintiff through (1) personal letter, (2) service of an Amended Witness List and (3) electronic notice. Plaintiff's claim of "confusion" is not the applicable standard and provides no credible basis for ignoring the privileges that protect disclosure.

### i.   Information and Documents Communicated to or from Mr. Smith are Privileged and Not Discoverable Based on the Attorney-Client Privilege.

35.     Communications exchanged between StandardAero and Mr. Smith is protected by the attorney-client privilege.   The attorney-client privilege[1] applies to communications between a client and the client's attorney.   Where the purpose of the communication is to facilitate the rendering of legal services by the attorney, the privilege also covers communications between the client's agent and the client's attorney.   *See Golden Trade v. Lee Apparel Co.*, 143 F.R.D. 514, 518 (S.D.N.Y. 1992); Edna Selan Epstein, I *The Attorney Client Privilege and the Work Product Doctrine*, 216-17, ABA Sec. of Litig. (5th ed. 2007).   Courts define the term "agent" broadly to encompass a

---

[1]  The U.S. Supreme Court has recognized that the attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).   It exists to protect "not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Id.* at 389-91.   "[T]he privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Id.* at 389.

broad range of individuals – from expert consultants to relatives to insurance agents – whose presence is necessary to the rendering of advice.  *See, e.g, Kevlik v. Goldstein*, 724 F.2d 844, 849 (lst Cir. N.A. 1984) (client's father); *U.S. v. Bigos Corp.*, 459 F.2d 639, 643 (1st Cir. 1972) (client's father), *cert. denied sub nom.*, *Raimondi v. United States*, 409 U.S. 847 (1972); *In re Copper Mkt. Antitrust Litig.,* 200 F.R.D. 213 (S.D.N.Y. 2001) (public relations firm); *Foseco Int'l. v. Fireline Inc.*, 546 F. Supp. 22, 25 (N.D. Ohio 1982) (patent agent); *Miller v. Haulmark*, 104 F.R.D. 442, 445 (E.D. Pa. 1984) (insurance agent); *Harkobusic v. General American Transp. Corp.*, 31 F.R.D. 264, 265 (W.D. Pa. 1962) (brother-in-law); *American Colloid Co. v. Old Republic Ins. Co.*, 1993 WL 195270 *2-3 (N.D.Ill. June 1993) (communications between plaintiff's insurance broker as its agent and plaintiff's counsel privileged); *Carte Blanche Ltd. v. Diners Club, Int'l, Inc.*, 130 F.R.D. 28, 33-34 (S.D.N.Y. 1990) (correspondence between client's agent and client's counsel protected by attorney-client privilege), *rev'd on other grounds*, 2 F.3d 24 (2d Cir. 1993).   The attorney-client privilege protects confidential communications between an attorney and his or her client "made for the purpose of furnishing or obtaining professional legal advice and assistance."  *In re LTV Sec. Litig.*, 89 F.R.D. 595, 600 (N.D. Tex. 1981).  The privilege applies in both directions: to communications from the client to the attorney, and to communications from the attorney to the client.  *Schwimmer v. United States*, 232 F.2d 855, 866 (8th Cir. 1956), *cert. denied*, 352 U.S. 833 (1956).

36.    Like other "agents," communications with an expert consultant are within the scope of the attorney-client privilege.  For example, in *Benedict v. Amaducci*, 1995 WL 23555 (S.D.N.Y. 1995), the court held that conversations between plaintiffs' counsel and the client's consultants in order to prepare them for prospect of litigation and assist with litigation "are protected by the privilege, because [the consultant] was acting as plaintiffs' representative during those consultations."   Likewise, in *Farmaceutisk Laboratorium v. Reid Rowell, Inc.*, 864 F.Supp. 1273 (N.D. Ga. 1994), the court held that an independent consultant was so meaningfully associated with corporation that it could be considered an "insider" for purposes of privilege.  As the foregoing cases demonstrate,

the inclusion of "agents" and expert consultants, as a subset of "agents," within the framework of the attorney-client privilege is as fundamental as the privilege itself.

37. Within this framework, Mr. Smith's role as an expert consultant is squarely within the protection of the attorney-client privilege. Mr. Smith's role as an expert consultant and confidante of StandardAero during the pendency of this lawsuit is consistent with the analysis in *Farmaceutisk, supra*. Mr. Smith's privileged role in this litigation is fundamental to trial preparation, his communications with StandardAero, and its counsel, on privileged matters and those communications are viewed by all as privileged.

38. To the extent Plaintiff claims he is entitled to StandardAero's privileged communications with Mr. Smith, based on the assertion that Mr. Smith may possess discoverable underlying factual information, Plaintiff's argument must fail. Privilege does not give way to expediency. Plaintiff's arguments that the information may conveniently be obtained from Mr. Smith are unavailing because "considerations of convenience do not overcome the policies served by the attorney-client privilege." *Upjohn,* 449 U.S. at 396. The attorney-client privilege affords absolute protection to privileged communications. As explained in *Admiral Ins. Co. v. U.S. District Court*, 881 F.2d 1486 (9th Cir. 1989), "the privilege cannot be overcome by a showing of need." *Id.* at 1494. The attorney-client privilege cannot be vitiated by a claim that the information sought is unavailable from any other source. *Id.* at 1495. "Such an exception either would destroy the privilege or render it so tenuous and uncertain that it would be little better than no privilege at all." *Id.* Accordingly, the discoverability of underlying factual information cannot justify a waiver of privilege as to Mr. Smith's communications. *See also* discussion at p. 28-30, ¶ 51-54, *infra*.

> **ii. Information and Documents Communicated to or from Mr. Smith are Privileged and Not Discoverable Based on the Attorney Work-Product Doctrine.**

39.    Information exchanged between StandardAero and Mr. Smith is also protected by the attorney work-product doctrine.  The work-product doctrine "protects the work of the attorney done in preparation for litigation..." *United States v. Under Seal* (*In re Grand Jury Proceedings)*, 33 F.3d 342, 348 (4th Cir. 1994).  It also "protects materials prepared by the attorney, whether or not disclosed to the client, and it protects material prepared by agents for the attorney." *In re Grand Jury Proceedings*, 601 F.2d 162, 171 (5th Cir. 1979).  "The doctrine was designed to prevent unwarranted inquiries into the files and mental impressions of an attorney and recognizes that it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *EEOC v. Woodmen of the World Life Ins. Soc'y*, 2007 WL 1544772, n.1 (Mar. 23, 2007), quoting *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 402 (8th Cir. 1987) (internal quotations omitted).  As the U.S. Supreme Court has recognized, the work-product doctrine is critical to a lawyer's ability to render professional services to his client:

> Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference...   This work is reflected, of course, be in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways . . . . Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten  . . . .  Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial.  The effect on the legal profession would be demoralizing.  And the interests of the clients and the cause of justice would be poorly served.

*Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947).  Finally, litigation need only be contemplated at the time the work is performed for the doctrine to apply.  *See Holland v. Island Creek Corp.*, 885 F. Supp. 4, 7 (D.D.C. 1995).

40.     Plaintiff has not and cannot meet the burden of overcoming the application of the attorney work-product doctrine.  Whereas "factual" work-product may be discoverable upon a showing of substantial need for the information sought, the protection afforded to "opinion" work-product – which reflects counsel's subjective beliefs, impressions, and strategies regarding a case – is nearly absolute.  *See Baker v. GMC* (*In re GMC*), 209 F.3d 1051, 1054 (8th Cir. 2000) ("opinion work product enjoys almost absolute immunity and can be discovered only in very rare and extraordinary circumstances, such as when the material demonstrates that an attorney engaged in illegal conduct or fraud."); *Upjohn*, 449 U.S. at 401 (opinion work product "cannot be disclosed simply on a showing of substantial need and inability to obtain the equivalent without undue hardship"); *Petersen v. Douglas County Bank & Trust Co.,* 967 F.2d 1186, 1189 (8th Cir. 1992) (finding attorney's determination as to which documents are important to a case are also protected as work product).

41.     Moreover, work-product in the possession of a non-testifying expert is protected from disclosure.  *See Turner v. Moen Steel Erection, Inc.*, 2006 WL 3392206, at *11 (D. Neb. Oct. 5, 2006) (Gossett, Mag. J.).   This Court has recognized that disclosure of documents protected by the work-product doctrine to third parties does not necessarily waive the protection of the work-product doctrine.  *EEOC v. Woodmen of the World Life Ins. Soc'y*, 2007 WL 1544772 at *3-4 (D. Neb. 2007); *cf. Monsanto Co. v. Cropscience,* 214 F.R.D. 545 (E.D. Mo. 2002) (party that supplies work product to expert that *testifies* as witness waives protection of work product doctrine).  As noted in *EEOC,* Rule 26(b)(c) specifically addresses the issue of discovery of documents and tangible things by or for the other party's "attorney, consultant, surety, indemnitor, insurer, or agent."   *EEOC*, 2007 WL 1544772 at *3.   Production is limited to a showing of "substantial need" and "undue hardship to obtain the substantial equivalent of the materials by other means."   *EEOC*, 2007 WL 1544772 at *3.  As previously discussed in the context of Rule 26(b)(4)(B), no such showing has been or can be made.  *See* p. 14-15, ¶ 27-28, *supra*.

42.     Communications sought in the Smith Subpoena is precisely the sort of information that the work-product doctrine protects.  Mr. Smith's role as an expert consultant involves analysis for StandardAero, and its counsel, in areas such as assumption of risk by test pilots, sufficiency of pre-flight inspections, operation of aircraft and aircraft safety, and in-flight mechanical failures.  Such analysis is a critical part of work-product generated by StandardAero's counsel in the course of litigation and StandardAero's defense in this matter.  Such analysis is also contingent upon the exchange of other attorney work-product, including independent investigative efforts, legal theories and mental impressions of counsel.  As the above-referenced decisions ranging from the U.S. Supreme Court to this Court demonstrate, such dialogue and consultations with an expert consultant are an indispensable part of an attorney's trial preparation.  Plaintiff has not and simply cannot make a showing that the attorney work-product doctrine does not attach or should be overcome.

### iii. Information and Documents Communicated to or from Mr. Smith are Privileged and Not Discoverable Based on the Joint Defense or Common Interests Privilege.

43.     Communications between StandardAero and Mr. Smith are also firmly protected by the joint defense or "common interests" privilege.  Plaintiff argues that this privilege does not apply because Mr. Smith is a testifying expert witness, Mr. Smith is not a defendant in this action, and there does not "appear" to Plaintiff to be a commonality of interests between StandardAero and Mr. Smith.  (*See* Plaintiff's Brief § A.2.)  Plaintiff's arguments are predicated on a fundamental misunderstanding of the law and facts.  As discussed previously, Mr. Smith is a non-testifying expert consultant— not a testifying expert witness.  Further, the common interests clearly applies where, as here, communications are exchanged between interested parties, notwithstanding that both such parties are not named in a lawsuit.

23

44.     The "joint defense" privilege enables counsel for clients with a common interest "to exchange privileged communications and attorney work product in order to adequately prepare a defense without waiving either privilege." *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 94 (3d Cir. 1992); *see also Waller v. Financial Corp. of America*, 828 F.2d 579, 583 n.7 (9th Cir. 1987) ("communications by a client to his own lawyer remain privileged when the lawyer subsequently shares them with codefendants for purposes of a common defense"), quoting *United States v. McPartlin*, 595 F.2d 1321, 1326 (7th Cir. 1979), *cert. denied*, 444 U.S. 833 (1979).  However, the privilege covers communications not only among counsel for clients with common interests but also between an individual and an attorney for a different party with a common interest. *United States v. Schwimmer*, 892 F.2d 237, 244 (2d Cir. 1989), *cert. denied*, 502 U.S. 810 (1991) (it is not necessary for attorney representing the communicating party to be present when the communication is made to the other party's attorney).  The privilege allows parties to pool information in order to obtain effective representation. *See* 2 Stephen A. Saltzberg, *Federal Rules of Evidence Manual* 599 (6th ed. 1994).  Finally, the "common interest may be either legal, factual or strategic." *See GP Indus., LLC v. Bachman*, 2008 WL 4279739 at *9 (D. Neb. Sept. 16, 2008); *In re Grand Jury Subpoena Duces Tecum,* 112 F.3d 910, 922 (8th Cir. 1997).

45.     The Eighth Circuit recognizes the application of the common interest doctrine in certain situations:

> If two or more clients *with a common interest in a litigated or non-litigated matter* are represented by separate lawyers and they agree to exchange information concerning the matter, a communication of any such client that otherwise qualifies as privileged . . . that relates to the matter is privileged as against third persons.  Any such client may invoke the privilege, unless it has been waived by the client who made the communication… Th[e common interest] doctrine softens the ordinary requirement that lawyer-client communications must be made in confidence in order to be protected by the privilege.

24

*In re Grand Jury Subpoena Duces Tecum*, 112 F.3d at 922; citing *Restatement* § 121; *John Morrell & Co. v. Local Union 304A of United Food & Commercial Workers*, 913 F.2d 544, 555-56 (8th Cir. 1990) (applying the doctrine), cert. denied, 500 U.S. 905, 111 S. Ct. 1683, 114 L. Ed. 2d 78 (1991).  The Eighth Circuit has also held that the attorney-client privilege applies in separate lawsuits when defendants share a common interest in litigation.  *See Morrell*, 913 F.2d at 555-56.  These elements are present here.

46.     Communications between StandardAero and Mr. Smith were made due to actual or anticipated litigation.  Contrary to Plaintiff's assertions, parties need not be co-defendants for the joint defense privilege to apply.  *See Morrell*, 913 F.2d at 555-56.  In *Morrell*, the Eighth Circuit held that an internal memorandum written by Morrell's general counsel, that came into the Union's possession because of another lawsuit, was protected by attorney-client privilege.  *Id*.  Said the court:

> Prior to the action before us, a group of Morrell employees at another plant brought a class action against Morrell and the United Food and Commercial Workers International Union, one of the unions involved in this appeal, concerning a plant closing . . .  Morrell reached a settlement with the employee class but the International Union filed cross-claims against Morrell. . .  Morrell gave the employees access to seventeen privileged documents for use in their case against the International Union. . .  The district court ruled that the document was shielded by attorney-client privilege and the doctrine of work-product immunity. . .  [Affirming, the Eighth Circuit concluded that:]  *The Aguinaga employees and Morrell shared a joint defense privilege by virtue of being aligned on the same side following their settlement and the International Union's cross-claims.*

*Morrell*, 913 F.2d at 555-56 (emphasis added) (citations omitted); s*ee also In re Grand Jury Subpoena Duces Tecum Dated Nov. 16, 1974*, 406 F. Supp. 38l, 389 (S.D.N.Y. 1975) ("the attorney-client privilege covers communications to a prospective or actual co-defendant's attorney when those communications are engendered solely in the

25

interests of a joint defense effort."); *In re Grand Jury Subpoenas, 89-3 & 89-4, John Doe 89-129* (Under Seal) 902 F.2d 244, 249 (4th Cir. 1990) ("Whether an action is ongoing or contemplated. . . the rationale for the joint defense rule remains unchanged: persons who share a common interest in litigation should be able to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims.")

47.     Pursuant to this standard, communications between StandardAero and Mr. Smith were clearly made due to actual or anticipated litigation.  Moreover, Mr. Smith was also a recent defendant in another lawsuit by Plaintiff in connection with circumstances arising out of Mr. Smith's prior relationship with or alleged "employment" of Plaintiff.  That action, entitled *Shane Lester v. Richard Smith,* was filed by Ms. Derr, on June 21, 2006, in the Douglas County District Court, as Doc. No. 1062, Page No. 405, and was dismissed by the Court on April 26, 2007.  Since the test flight on August 22, 2005, Plaintiff has demonstrated a pattern of lawsuits, threatened lawsuits, false claims and allegations concerning RAS Aviation, Mr. Smith, StandardAero, and certain StandardAero employees.  As such, the consultations between Mr. Smith and StandardAero were always with the mutual understanding that StandardAero and RAS Aviation had a common interest in defending against such indiscriminate claims and allegations by Plaintiff.

48.     Communications between StandardAero and Mr. Smith were also made for the purposes of furthering a common interest.  The party's interest need not necessarily be identical for the common interest privilege to apply.  Rather, the parties must have a "common purpose." *McPartlin*, 595 F.2d at 1336-37, *cert. denied*, 444 U.S. 833 (1979).  StandardAero's and Mr. Smith's interests and purpose coincide with the need to defend against Plaintiff's claims and allegations concerning Plaintiff's prior dealings with these parties and the circumstances of the test flight on August 22, 2005.

49.     Moreover, StandardAero and Mr. Smith share a common interest because any claim Plaintiff asserts against StandardAero concerning the safety of aircraft

N411Z Plaintiff may ultimately relate to RAS Aviation's management of the aircraft. As the manager of the aircraft, RAS Aviation is an interested party in Plaintiff's claim against StandardAero, which is the maintenance and repair company of that aircraft. Plaintiff has sued StandardAero based on the condition of the aircraft and has previously sued Mr. Smith based on a theory of RAS' alleged "employment" of Plaintiff. There is no legitimate basis for Plaintiff to argue that the parties' interests are not aligned. Thus, Plaintiff's assertion that there does not "appear" to Plaintiff to be a commonality of interests between StandardAero and Mr. Smith is not consistent with reality and the common understanding between StandardAero and Mr. Smith.

50.    Finally, the communications between StandardAero, its counsel, and Mr. Smith were always made in a manner consistent with maintaining confidentiality against adverse parties. These consultations were always in confidence and with the mutual understanding of such confidence. No waiver was effectuated by disclosure of the communications to any third party or parties and proper objections concerning Plaintiff's attempts to discover these privileged communications were timely and consistently made and maintained. Accordingly, and despite any of Plaintiff's "appearances" to the contrary, the law and the reality are such that the communications between StandardAero and Mr. Smith fall squarely within the protection of the joint defense or "common interests" privilege.

### D. Plaintiff's Assertion that Mr. Smith may Possess Discoverable Factual Knowledge or Information Does Not and Cannot Defeat Privilege with Respect to Privileged Communications During the Pendency of this Lawsuit.

51.    Plaintiff asserts Mr. Smith is arguably a "fact" witness. Plaintiff further asserts he is entitled to privileged communications and work product involving Mr. Smith as a result. There is no logical connection between the two propositions. Although otherwise inapplicable, Plaintiff's leading case, *Pioneer*, recognizes that a person may have both discoverable factual information and non-discoverable privileged

27

information. *See Pioneer*, 238 F.3d at 1376 (designating corporate counsel as testifying witness for a 30(b)(6) deposition does not waive attorney-client privilege; corporate counsel is often a fact witness and may testify as to factual matters without waiver), citing *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1552 (10th Cir. 1995). Further, limited discovery of underlying facts from a person does not justify discovery of privileged communications and work product from that person. *See Pioneer*, 238 F.3d at 1376 (public disclosure of certain facts does not destroy attorney-client privilege with respect to attorney-client communications about those facts), citing *United States v. El Paso Co.*, 682 F.2d 530 n. 10 (5th Cir. 1982); *see also Dayton-Phoenix*, 1997 WL 1764760 at *2 (allowing limited deposition of re-designated expert with respect to knowledge and facts developed before litigation, but barring discovery of facts and opinions acquired as an expert consultant). Notwithstanding Plaintiff's claim that such underlying knowledge or information *must* somehow exist, privileged communications and work product involving Mr. Smith should be protected.

52.     Mr. Smith has no discoverable factual knowledge or information. Mr. Smith was not personally involved in the actual inspection and maintenance of the aircraft, was not present at the time of the pre-flight inspection, was not on-board the test flight and was not a party to the post-flight inspection or investigation. Mr. Smith's role as an expert consultant in this matter has been limited to expert analysis of independently-obtained factual information, including factual information obtained from StandardAero, third parties and public record.

53.     Nevertheless, Plaintiff may argue that Mr. Smith has discoverable factual knowledge and that Plaintiff is entitled to such knowledge or information. Plaintiff may point to RAS Aviation's management contract for aircraft N411Z and the alleged "employment" of Plaintiff on August 22, 2005. However, RAS Aviation's management of aircraft N411Z and Plaintiff's employment status are not at-issue in this case. StandardAero handled the inspection and maintenance of aircraft N411Z that

28

occurred prior to the test flight on August 22, 2005, and the investigation of the incident following the test flight. Likewise, Plaintiff was solely responsible for the pre-flight inspection, the test flight and the post-flight inspection. Neither Mr. Smith nor RAS Aviation had any involvement in and, therefore, any discoverable knowledge or information concerning, any of these matters.

54.    Even if this Court were to find that Mr. Smith may possess discoverable factual information, the Court should limit any discovery directed to Mr. Smith strictly to underlying facts, in order to protect privileged communications and work-product involving Mr. Smith. *See Turner v. Moen Steel Erection, Inc.,* 2006 WL 3392206 at *1 (D. Neb. 2006). *Turner* involved a discovery dispute over requests seeking documents from a non-testifying expert consultant. *Id.* at *11. The court allowed limited production of factual information, while denying the discovery of any privileged information:

> Apparently, Moen has retained *consulting experts*, but has not yet retained any testifying expert. The dispute over Requests Nos. 12, 13, 14, 15 and 22 appears to center around Moen's refusal to produce any information whatsoever that was obtained from a consultant. I find that Moen should be required to produce all factual information contained in documents responsive to Requests Nos. 12, 13, 14, 15 and 22. *Responsive documents may be redacted as necessary to preserve any attorney work-product. Moen is cautioned that any documents that were prepared in the normal course of business pursuant to regulation or contract, or for any purpose other than "anticipation of litigation," are fully discoverable.*

*Id.* at *11 (emphasis added). Plaintiff has offered no justification for any, much less all, of Mr. Smith's information. If, under the circumstances, the Court deems factual discovery of Mr. Smith or RAS Aviation to be appropriate, such discovery should be limited to Mr. Smith's factual knowledge or information concerning underlying factual matters – or, more appropriately, Mr. Smith's lack thereof.

## IV.  CONCLUSION

55.    For each of the foregoing reasons, StandardAero respectfully requests that the Court deny Plaintiff's Motion to Compel, issuance of the Smith Subpoena, in its entirety or, at a minimum, in its present overbroad form, so as to prevent disclosure of non-discoverable privileged communications and information.

January 26, 2009

**Garrett Aviation Services, LLC
d/b/a Landmark Aviation, Defendant.**

By:  s/Mark A. Nadeau
David A. Domina, #11043
Terry A. White, #18282
DOMINALAW Group pc llo
2425 South 144th Street
Omaha, NE  68144-3267
(402) 493-4100

and

Mark A. Nadeau, *pro hac vice*
Richard Kovacik, *pro hac vice*
DLA Piper LLP (US)
2415 East Camelback Road, Suite 700
Phoenix, AZ 85016
(480) 606-5100

*Defendant's Lawyers*

**United States District Court**
**District of Nebraska**

| | |
|---|---|
| Shane Lester, | Case No. 08cv0316 |
| | **Chief Judge Joseph F. Bataillon** |
| Plaintiff, | **Mag. Judge Thomas D. Thalken** |
| v. | |
| Garrett Aviation Services, LLC | **Certificate of Service** |
| d/b/a Landmark Aviation | |
| Defendant. | |

I certify that on January 26, 2009 I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Kathryn J. Derr, Esq.
Derr, Howell PC, LLO
11205 Wright Circle  Ste. 210
Omaha, NE 68144
kjd@derrhowell.com

s/ Mark A. Nadeau

31