IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

SHANE LESTER, )
 )   8:08CV316
          Plaintiff, )
 )
    v. )
 )   MEMORANDUM AND ORDER
GARRETT AVIATION SERVICES, LLC )
d/b/a Landmark Aviation, )
 )
          Defendant. )
 )

      This matter is before the court on plaintiff's motion for partial summary judgment as to liability, Filing No. 74, and defendant's motion for summary judgment, Filing No. 78. This is an action for negligent infliction of emotional distress. Plaintiff, Shane Lester ("Lester") is a pilot who conducts test flights. Defendant, Garrett Aviation Services, LLC ("Garrett Aviation") operates an aircraft repair station. The plaintiff conducted a test flight during which the aircraft had a mechanical failure causing it to nose-dive and rapidly lose altitude. The plaintiff alleges that Garrett Aviation's negligence caused the mechanical failure. The plaintiff further alleges that he experienced emotional trauma as a result of the test-flight incident.

      In his motion for partial summary judgment, the plaintiff argues that the uncontroverted facts establish negligence on the part of the defendant, and therefore the only issues at trial should be causation and damages.

      In its motion for summary judgment, the defendant argues that the plaintiff's claim for negligent infliction of emotional distress must fail because the plaintiff has not shown that the alleged emotional distress is sufficiently severe.

## I.  FACTUAL BACKGROUND

Garrett Aviation operates an aircraft repair station at Omaha Eppley Airfield.  From August 1 to August 19, 2005, Garrett Aviation completed an annual maintenance and inspection of a Cessna 421B, tail number N411Z ("Aircraft").  Filing No. 98, Ex. 4 at SA000249.  As part of the maintenance, a Garrett Aviation mechanic removed and replaced the aircraft's elevator trim tab actuator. Filing No. 98, Ex. 5 at SA000039.  During the inspection, a Garrett Aviation inspector certified that the mechanic had replaced the elevator trim actuator.  Filing No. 98, Ex. 4 at SA000249.

On August 22, 2005, Lester conducted a post-inspection flight of the N411Z aircraft. Filing No. 76, Ex. 6, Affidavit of Lester at ¶ 4.  The purpose of a post-inspection flight is to ensure that the aircraft functions properly following aircraft maintenance or inspection. Filing No. 98, Ex. 7 at 5.  Prior to departure, Lester reviewed the maintenance logs and completed a pre-flight inspection. Filing No. 98, Ex. 2, Lester Deposition at 187:7-10; 189:22-190:13.  During the pre-flight inspection, Lester checked the elevator trim tab and noted that the push rod bolt was in place.  *Id.* at 189:25-190:17.  Lester did not, however, identify or inspect the nut or cotter pin which joined the elevator trim actuator to the push rod of the elevator trim tab.  *Id.* at 189:25-190:2-7; 191:25-192:18.

After the pre-flight inspection of the aircraft, Lester, along with co-pilot Steve Gass ("Gass") and passenger Mick Kmeick, departed Eppley Airfield Omaha.  Filing No. 98, Ex. 2, Lester Deposition at 146:17-24.  Approximately eight or ten minutes into the flight, at 12,000 feet, Lester heard a loud pop from the tail, and the aircraft went into a nose dive at a 75- to an 85-degree angle.  *Id.* at 147:15-23; 152:10-15.  The aircraft rapidly lost altitude, and Lester declared an emergency landing.  Filing No. 76, Ex. 6, Affidavit of Lester

at ¶ 9-10; Ex. 10, Affidavit of Gass at ¶ 8-9.  As the aircraft descended to 7,000 feet, Lester and Gass pulled up on the yolk and returned the nose of the aircraft to a level position.  *Id.*  At 4,000 feet Lester and Gass achieved a level pitch, but they did not have control of the aircraft's altitude or speed.  *Id.*  Lester and Gass stated that during the rapid descent they did not think they would safely land the aircraft.  *Id.*  Lester stated that during the descent he thought of his family and hoped that death would be instantaneous.  *Id.*  Lester and Gass successfully landed at Lincoln Municipal Airport in Lincoln, Nebraska, without any damage to the aircraft.  Filing No. 98, Ex. 2, Lester Deposition at 150:19.  Lester did not sustain any physical injuries as a result of the test flight.  *Id.* at 150:19-151:5.  Emergency medical personnel were on scene at the airport, but Lester declined treatment.  *Id.* at 216:3-18.

Lester stated that after he landed the aircraft he observed that the elevator trim tab had failed.  Filing No. 76, Ex. 6, Affidavit of Lester at ¶ 11.  Garrett Aviation conducted an investigation of the test flight and found that "the bolt attaching the rod end to the trim tab actuator arm was found missing."  Filing No. 98, Ex. 10, SA000028-30.  The Garrett Aviation mechanic who replaced the elevator trim tab actuator could not recall whether he had installed the cotter pin onto the nut that secures the bolt.  Filing No. 98, Ex. 12 at SA000037.  The cotter pin helps to hold the nut onto the bolt, and keeps the nut from losing torque.  On August 26, 2005, the vice-president of Garrett Aviation terminated the aircraft inspector and the mechanic.  Filing No. 76, Ex. 17 SA000147; Ex. 18 at SA000192.  The vice-president stated the reason for termination of the inspector and mechanic, respectively,

> Investigation of this incident shows that you failed to properly perform the
> aircraft maintenance inspection causing you to fail to notice that a cotter key

>on the nut & bolt assembly had not been attached. This caused the bolt to come [loose] from the trim tab.
>
>Investigation of this incident shows that you failed to attach a cotter key on the nut & bolt assembly, causing the bolt to come [loose] from the trim tab.

*Id.*

In addition to these findings, the Garrett Aviation investigation discovered two deficiencies in the aircraft maintenance paperwork. Filing No. 76, Ex. 3 at SA000028-30. First, the elevator trim actuator was not listed on the removal and installation sheet. *Id.* Second, the inspection checklist did not have an inspection stamp for the elevator trim system. *Id.*

Garrett Aviation sent a voluntary disclosure to the FAA providing the previously stated findings of the internal investigation and further stating:

>It has been determined the root cause of the subject trim tab failure was likely a result of the trim tab fastener not being secured with the required locking device [cotter pin] allowing the attachment nut to loose [sic] torque and fall off during flight.

Filing No. 98, Ex 10 at SA000028-30.

Lester alleges that he suffered emotional distress as a result of the August 22, 2005, post-inspection test flight. Filing No. 1 Ex. A. Lester states that during the flight he "suffered great mental pain, anguish, distress of mind and nervous shock of a severe nature as [he] reasonably felt that his life was in immediate danger." *Id.* Lester further alleges that in the days and weeks after the incident he "suffered from severe stress impairing his day-to-day functions and exhibited by extreme anxiety, adrenaline surges and nightmares." *Id.*

Lester continued to work as a professional pilot following the August 22, 2005, incident. On August 25, 2005, three days after the test flight, Lester flew another airplane,

as required for his employment. Filing No. 83, Ex. 1, Lester Deposition at 220:6-16. On September 7, 2005, Lester co-piloted the same aircraft that he flew during the initial incident. *Id.* at 225:25-228:10; 229:22-230:10. Lester also has a history of skydiving, and he continued to skydive after the August 22, 2005, incident. *Id.* at 139-140:23.

Lester did not seek medical or psychological treatment for his alleged emotional trauma resulting from the August 22, 2005, flight. Filing No. 83, Ex. 1, Lester Deposition at 89:20-91:11. He did not take any prescription medications for his alleged emotional distress. *Id.* at 91:12-15. Lester received emotional support through attending Alcoholics Anonymous meetings. *Id.* at 91:1-11.

In May 2006, Lester completed a psychiatric evaluation to maintain his medical clearance for his pilot's license. *Id.* at 113:19-114:14. During this evaluation he denied experiencing depression, sleep disturbances, or problems concentrating. *Id.* at 113:19-25. Lester later testified that during the time of the evaluation he was in fact experiencing these symptoms, but he had denied having any symptoms in order to pass his medical evaluation and keep his pilot's license. *Id.* at 113:19-116:6.

Dr. Engler, plaintiff's expert witness, conducted a psychological evaluation of Lester on January 1, 2009. Filing No. 89, Ex. 22. On the basis of this evaluation, Dr. Engler found that during the first three to five weeks following the incident, Lester met the criteria for Acute Stress Disorder. *Id.* Dr. Engler stated in his evaluation that Lester suffered emotional distress as a result of the test-flight incident, specifically, Lester experienced Acute Stress Disorder, substance abuse, and anxiety. *Id.* Dr. Engler found that Lester's condition improved over time, but at the time of the evaluation he continued to experience anxiety. *Id.* Dr. Engler found that Lester's symptoms were not sufficient to lead to a full

diagnosis of Posttraumatic Stress Disorder. *Id.* In Dr. Engler's opinion, however, Lester experienced emotional distress so severe that no reasonable person should be expected to endure it. *Id.* Dr. Engler stated that he based his findings on examinations of the plaintiff and psychological tests. Filing No. 89, Ex. 23. The report does not indicate what psychological tests Dr. Engler conducted, or which facts from past examinations supported the diagnosis. *Id.* In addition to his findings regarding the plaintiff, Dr. Engler also noted that it is not unusual for a person in Lester's type of employment to avoid attending therapy or taking medication, as a mental illness diagnosis may result in the loss of a license or employment. *Id.*

## II. STANDARD OF REVIEW

Summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Harder v. ACandS, Inc.*, 179 F.3d 609, 611 (8th Cir. 1999). The burden of establishing the nonexistence of any genuine issue of material fact is on the moving party. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Therefore, if defendant does not meet its initial burden with respect to an issue, summary judgment must be denied notwithstanding the absence of opposing affidavits or other evidence. *Adickes*, 398 U.S. at 159-60; *Cambee's Furniture, Inc. v. Doughboy Recreational, Inc.*, 825 F.2d 167, 174 (8th Cir. 1987). "If the moving party meets the initial burden of establishing the nonexistence of a genuine issue, the burden then shifts to the opposing party to produce evidence of the existence of a genuine issue for trial." *Johnson v. Crooks*, 326 F.3d 995,

1006 (8th Cir. 2003). "A 'genuine' issue of material fact exists when there is sufficient evidence favoring the party opposing the motion for a jury to return a verdict for that party." *Id.* at 1005.

"In determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party." *Id.* at 1005-06. "In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations." *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003). "Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Koehn v. Indian Hills Cmty. Coll.*, 371 F.3d 394, 396 (8th Cir. 2004).

A filing of cross-motions for summary judgment does not "necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits." *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983). Consequently, "where conflicting inferences as to a material fact may reasonably be drawn from the materials before the court, the case is not appropriate for summary judgment." *Id.*

### III.  DISCUSSION

A claim of negligent infliction of emotional distress requires a showing that the plaintiff suffered emotional distress so severe that "no reasonable person could have been expected to endure it," and the "emotional anguish or mental harm must be medically diagnosable and must be of sufficient severity that it is medically significant." *Hamilton v. Nestor*, 265 Neb. 757, 767 (2003) (quoting *Schleich v. Archbishop Bergan Mercy Hosp.*, 241 Neb. 765, 770-71 (1992).).

The evidence supporting plaintiff's claim of emotional distress is limited to his own testimony and the opinion of an expert witness who conducted a psychological evaluation of the plaintiff nearly four years after the initial incident.

The plaintiff's symptoms and diagnosis fail to show that the plaintiff's emotional distress was "so severe that no reasonable person could have been expected to endure it." See *Hamilton*, 265 Neb. at 768. In *Hamilton*, the plaintiff was in a car crash and later exhibited symptoms of flashbacks and nightmares. The expert witness testified that Hamilton suffered from Post Traumatic Stress Disorder ("PTSD"). The expert testified that PTSD ranges in severity, and Hamilton fell on the lower half of the range. The court found, even with the PTSD diagnosis, that the plaintiff's emotional anguish did not reach the level of severity that no reasonable person could be expected to endure. *Id.* In the instant case, the expert diagnosed the plaintiff with Acute Stress Disorder, which is less severe than PTSD. In fact, Dr. Engler stated in his report that plaintiff's symptoms did not meet the level of severity required for a PTSD diagnosis. The plaintiff's emotional distress may be medically diagnosable and significant; however, the evidence fails to establish that the plaintiff suffered from emotional distress so severe that no reasonable person could be expected to endure it. *Id. See also Sell v. Mary Lanning Memorial Hosp. Ass'n* 243 Neb. 266, 268-72 (1993) (holding, as a matter of law, mother who suffered symptoms of sleeplessness, anxiety, depression, and nightmares after being misinformed of her son's death, did not suffer from actionable emotional distress).

When the emotional distress does not have "an extraordinary effect, either psychological or physical," it fails to reach the level of severity that no reasonable person could have been expected to endure. See *Parrish v. Omaha Pub. Power Dist.*, 242 Neb. 731, 734 (1993) (holding child did not have an extraordinary reaction to father's death, and

therefore did not experience emotional distress so severe that no person could have been expected to endure it). Here, the plaintiff complains of multiple symptoms attributed to the test-flight incident; however, he continued to fly aircraft and skydive after the incident. In fact, the plaintiff piloted the same aircraft two weeks after the initial incident. The facts do not show that the incident had an "extraordinary effect" on the plaintiff.

The plaintiff's expert opinion states that the plaintiff suffered from emotional distress so severe that no reasonable person should be expected to endure it. The expert stated that he based his conclusion on a thorough examination of the plaintiff which included psychological tests and reviews of past examinations. The expert's report, however, does not indicate what psychological tests were conducted or which facts from past examinations supported his findings. The expert states his conclusion in terms of the ultimate issue in this case, but fails to provide factual support for the conclusion. This portion of the expert opinion, therefore, is given little weight. *See Jackson v. Anchor Packing Co.*, 994 F.2d 1295, 1304 (8th Cir. 1993) ("Conclusory affidavits, even from expert witnesses, do not provide a basis upon which to deny motions for summary judgment.").

The court has considered the evidence, including the plaintiff's testimony and the expert opinion, in the light most favorable to the plaintiff. The court finds that no genuine issue of material fact exists as to whether the plaintiff suffered emotional distress so severe that no reasonable person could have been expected to endure it. Accordingly, the defendant is entitled to summary judgment.[1]

---

[1] Because the court grants defendant's motion for summary judgment, the court need not address plaintiff's partial motion for summary judgment, and it is denied as moot.

IT IS, THEREFORE, ORDERED:

1. The defendant's motion for summary judgment, Filing No. 78, is granted.

2. The plaintiff's motion for partial summary judgment, Filing No. 74, is denied as moot.

DATED this 11th day of August, 2009.

BY THE COURT:


s/ Joseph F. Bataillon
Chief District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.